# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| CLAUDETTE BOULÉ ) | |
| ) | Case No. 08-43199-JBR |
| DEBTOR ) | |

## MEMORANDUM OF DECISION ON THE MOTION OF THE UNITED STATES TRUSTEE TO DISMISS CASE PURSUANT TO 11 U.S.C. § 727

This matter came before the Court on the Motion of the United States Trustee to Dismiss Case Pursuant to 11 U.S.C. § 707 [# 14], the Debtor's Opposition thereto [# 17], and the Memorandum of Law filed by the United States Trustee [# 22]. At issue is whether granting a Chapter 7 discharge to the Debtor, whose monthly income is below the applicable median income as calculated on Form B22A, would be an abuse in light of the totality of the circumstances.

**FACTS**

The Debtor, an individual whose debts are primarily consumer debts and total $113,647, filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on October 6, 2008. According to her Form B22A, the Chapter 7 Statement of Current Monthly Income and Means-Test Calculation, she is a below median income debtor.[1] Her Schedules I and J indicate that she has excess monthly income of $924.27. This excess income exists in large part because the Debtor currently pays no

---

[1] At the hearing on the Motion to Dismiss, the United States Trustee did not concede that the Debtor's monthly income is below median income and questioned the Debtor's claim as to the size of her household. She acknowledged, however, that the Motion to Dismiss was filed pursuant to 11 U.S.C. § 707(b)(3).

rent. At the hearing her attorney stated that the Debtor is not alleging that this situation will change in the foreseeable future.

Based on the Debtor's excess income as shown on Schedules I and J, the United States Trustee moved to dismiss pursuant to 11 U.S.C. § 707(b)(3).

**POSITION OF THE PARTIES**

Both the Debtor and the United States Trustee agree that this Motion turns on whether granting relief under Chapter 7 would be an abuse based on the totality of the circumstances. With that, their agreement ends. The Debtor argues that her monthly income is below median and therefore she is "in the so called safe harbor," by which she seems to mean having a below median income ends the inquiry as to the existence of abuse. It may also be that she may have been referring, although not by specific statutory citation, to § 707(b)(7), which is often referred to as a safe harbor provision. The Debtor also argues that, with the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA), Congress did what the court in *First USA v. Lamanna (In re Lamanna)*, 153 F.3d 1 (1st Cir. 1998), declined to do, namely impute a rental expense. The Debtor maintains that it would be a strange outcome for Congress to allow rental expenses to be imputed for the purpose of the means test under § 707(b)(2)(A) but deny a debtor the benefit of the housing allowance when examining the totality of the circumstances.[2] At the hearing the Debtor further alleged that her ability to pay by itself cannot sustain a finding of abuse. Citing *In re Nockerts*, 357 B.R. 497 (Bankr. E.D. Wisc. 2006), she claims that the United States Trustee must

---

[2]Because the Debtor's monthly income is below the median income, she did not complete Parts IV, V, VI, or VII of Form B22A and therefore did not list a housing expense.

2

show something more than an ability to pay in order to demonstrate abuse.

The United States Trustee contends that the pre-BAPCPA test for determining substantial abuse as set forth in *Lamanna* remains the applicable test for determining abuse under § 707(b)(3) and argues that the legislative history of BAPCPA supports this position. Under *Lamanna*, a debtor's ability to pay is the primary factor to be examined in the totality of the circumstances test. According to the United States Trustee the Debtor's excess income of $924.27 as shown on Schedule J provides "strong evidence" of abuse.

## DISCUSSION

Section 707(b)(1) permits dismissal of a Chapter 7 case filed by an individual debtor with primarily consumer debts if granting the debtor relief would be an abuse of the provisions of Chapter 7. Section 707 provides two independent bases for determining whether granting relief under Chapter 7 would be an abuse of the Bankruptcy Code. One involves cases in which a presumption of abuse arises under § 707(b)(2)(A), a situation which is only present if the debtor is an above median income debtor. The other basis, applicable to cases where there is either no presumption of abuse or the presumption is rebutted, is set forth in § 707(b)(3) and calls upon the Court to consider whether the petition was filed in bad faith or whether "the totality of the circumstances ... of the debtor's financial situation demonstrates abuse."[3] Having

---

[3]Section 707(b)(3) provides:

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider-
(A) whether the debtor filed the petition in bad faith; or
(B) the totality of the circumstances (including whether the debtor seeks to reject

3

income equal to or less than the applicable median income, although excusing the Debtor from the guts of the means test,[4] does not end the inquiry. The language of the statute is clear: § 707(b)(3) comes into play when a debtor is either not subjected to the means test because she has monthly income equal to or less than the applicable median income or she is subject to the means test but rebuts a presumption of abuse. "When the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). "Section 707(b)(2)(A) creates a statutory presumption of abuse in certain circumstances but offers no safe harbor to those debtors with respect to whom this statutory presumption does not arise." *In re Zaporski*, 366 B.R. 758, 770 (Bankr. E.D. Mich. 2007). *See also In re* Zuccarell, 373 B.R. 508, 513 (Bankr. N.D. Ohio 2007); *In re Baldino*, 369 B.R. 858, 860 (Bankr. M.D. Pa. 2007); *In re Mestemaker*, 359 B.R. 849, 853 (Bankr. N.D. Ohio 2007). Even *Nockerts*, upon which the Debtor relies,

---

a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

[4] Form B22A is sometimes referred to as the "means test." The means test for a Chapter 7 debtor is actually the calculations set forth in Parts IV-VII, which are based upon § 707(b)(2), a section which has been called "the heart of the means test." *In re Singletary*, 354 B.R. 455, 460 (Bankr. S.D.Tex.2006). An at or below median income Chapter 7 debtor is not subject to the "means test." *In re Pak*, 343 B.R. 239, 242 (Bankr. N.D.Cal. 2006). Chapter 13 debtors also complete a means test, Form B22C, which is based on § 1325(b)(3) and is used to calculate the Chapter 13 debtor's disposable income and applicable commitment period. The two means tests require different forms as they are intended to serve different purposes. *In re Perfetto*, 361 B.R. 27, 29 (Bankr. D.R.I. 2007).

4

specifically expressed approval for the *Pak* decision and others reaching similar conclusions. The *Nockerts* court distinguished those case by noting they involved below median income debtors and stated that "the courts in those cases, limited by § 707(b)(7), were prohibited from subjecting those debtors to the means test under § 707(b)(2). Since no means test was performed, an inquiry into the debtors' ability to pay was rightly conducted, for the first time." *Nockerts*, 357 B.R. at 507.

Moreover the safe harbor of § 707(b)(7), which prohibits dismissal a case for abuse pursuant to § 707(b)(2) if the debtor is an at or below median income debtor, does not permit such debtor to evade review under § 707(b)(3). Section 707(b)(7) speaks only to § 707(b)(2); it does not mention or refer in any way to § 707(b)(3).

Nor does the enactment of § 707(b)(2) compel that a finding that abuse under the totality of the circumstances test of § 707(b)(3) must rely on the facts other than a debtor's financial condition. Zuccarell, 373 B.R. at 513-14; *In re Lenton*, 358 B.R. 651, 662-63 (Bankr. E.D. Pa 2006); *In re McUne*, 358 B.R. 397 (Bankr. D. Or. 2006); *In re Richie*, 353 B.r. 569 (Bankr. E.D. Wis. 2006); *In re Paret*, 347 B.R. 12 (Bankr. D. Del. 2006); *In re Pak*, 343 B.R. 239 (Bankr. N.D. Cal. 2006); *In re Hill,* 328 B.R. 490 (Bankr. S.D. Tex. 2005). In *In re Henebury*, 361 B.R. 595, 607 (Bankr. S.D. Fla. 2007), the court observed that under § 707(b)(3) the inquiry is "the totality of the circumstances *of the debtor's financial situation."* (Emphasis in the original). Thus the court concluded that the ability to pay a substantial portion of the unsecured debt would be sufficient to sustain a finding of abuse.

To the extent that *Nockerts* holds that the ability to pay without more is insufficient in all circumstances to sustain a finding of abuse under the totality of the

circumstances test, the Court respectfully disagrees. In determining whether abuse exists based on the totality of the circumstances, courts apply the pre-BAPCPA concepts for determining "substantial abuse," the standard for dismissing cases pre-BAPCPA § 707(b), *In re Cribbs,* 387 B.R. 324, 333 (Bankr. S.D. Ga.2008); *In re Mestemaker,* 359 B.R. at 855,[5] although courts generally acknowledge the omission of the word "substantial" from BAPCPA was intended to convey a less stringent standard. *In re Christiansen,* 2009 WL 159361, *5 (Bankr. M.D.N.C. 2009); *In re Hartwick,* 359 B.R. 16, 20 (Bankr. D.N.H. 2007). The pre-BAPCPA test in this circuit, and one which at least may have some approval from Congress,[6] is laid out in *Lamanna.* Under *Lamanna* a debtor's ability to repay his debts out of current and future earnings may, in some instances, be sufficient without any additional showing.

> We adopt the "totality of the circumstances" test largely as it is described in *Krohn.* In so doing, we reject any per se rules mandating dismissal for "substantial abuse" whenever the debtor is able to repay his debt out of future disposable income, or forbidding dismissal on that basis alone.

---

[5]BAPCPA did not have a conference committee; thus there is no conference committee report. Instead on occasion courts have attempted to glean Congressional intent from fragments of prior reports. In *Mestemaker* the court noted that the December 7, 2000 Committee Report on bankruptcy reform legislation cited the *Lamanna* totality of the circumstances test with approval and further noted that the version of § 707(b) under consideration at that time was substantially similar to the that of BAPCPA. Other courts have rejected attempts to discern the legislative history of BAPCPA as "virtually useless." *In re Henebury,* 361 B.R. 595, 607 (Bankr. S.D.Fla. 2007)(quoting *In re McNabb,* 326 B.R. 785, 789 (Bankr. D. Ariz. 2005). *McNabb,* however, was dealing with the homestead cap and had reviewed the National Bankruptcy Review commission Final report (Oct. 1997). Among its criticisms was that the 1997 Report did "not provide an example of the kind of problem or abuse it was intended to correct, nor a citation to a case whose result it sought to alter." The 2000 Committee report did cite *Lamanna* with approval.

[6]*See* note 5.

6

> Such strict interpretations cannot be squared with the open-textured nature of § 707(b) and are inconsistent with § 707(b)'s purpose of guiding, not constraining, bankruptcy courts in the exercise of their equitable discretion. We hold that a bankruptcy court may, but is not required to, find "substantial abuse" if the debtor has an ability to repay, in light of all of the circumstances.

*Lamanna,* 153 F.3d 1, 4 -5 (footnotes omitted). But as the *Lamanna* court noted, it was adopting the test largely as set forth in *In re Krohn*, 886 F.2d 123 (6th Cir. 1989). The totality of the circumstances test as described in *Krohn* and set forth in *Lamanna* is as follows:

> In determining whether to apply § 707(b) to an individual debtor, ... a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. Substantial abuse can be predicated upon either lack of honesty or want of need. Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustments of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

The facts in *Lamanna* have some similarity to the ones now before this Court. Neither questioned the honesty; both focused on the ability to pay. In both cases the debtors had excess disposable income as determined by their schedules I and J. Both had what the debtor in *Lamanna* described as "artificially low" housing expenses,

7

Lamanna because he was living with his parents, the Debtor because she is living with a friend. Neither disputed the accuracy of their schedules and neither anticipated a change in the housing situation. Thus, as noted in Lamanna, their housing expenses are not "artificial"; they are "actual." Because Lamanna's debts amounted to approximately $15,000, his excess income as shown on schedules I and J was sufficient to pay his creditors in full. That is not true in this case.

In the instant case the Debtor has excess monthly income based on her Schedules I and J of $924.27 compared to general unsecured debts of $113,647.[7] The United States Trustee has not provided the Court with any calculations to show what the Debtor could repay in a Chapter 13 using the figures from the Debtor's own schedules. The Court notes, however, that based on the record before the Court, the Debtor is a below median income debtor and, as such, would have an applicable commitment period of 3 years, 11 U.S.C. § 1325(b)(4), unless she voluntarily agreed to extend the period. During this period of time, if $924.27 were paid each month to the Chapter 13 Trustee, the Debtor would have tendered a total of $33,273.72. Even without accounting for the Chapter 13 Trustee's commission, this amounts to less than 30% of the unsecured debt. The issue then to be decided is whether this amount, without more, is sufficient to sustain a finding of abuse.

---

[7]Because the Debtor, as a below median income debtor, was not required to complete the means test, her excess income as reflected in Schedules I and J is the appropriate figure to be used in examining her ability to pay as part of the totality of the circumstances test. Cf. In re Kibbe, 342 B.R. 411, 415 (Bankr. D.N.H.2006) ("In a below median case, 'projected disposable income,' as used in section 1325(b)(1)(B), is based on a debtor's current income and expenses as reflected on Schedules I and J."), aff'd In re Kibbe, 361 B.R. 302 (1st Cir. 2007).

In *In re Stewart*, 383 B.R. 429, 435 (Bankr. N.D.Ohio 2008), the court examined some cases under § 707(b) and observed that "all other things being equal, abuse under § 707(b) is more likely to be found when the debtor has the ability to repay a significant portion of his unsecured debt. *See, e.g., In re Zuccarell*, 373 B.R. 508 (Bankr.N.D.Ohio 2007) (ability to pay 100% of unsecured debts in 36 months warranted dismissal for abuse); *U.S. Trustee for W. Dist. of Virginia v. Harrelson*, 323 B.R. 176 (W.D.Va.2005) (abuse found where debtors had ability to pay 100% of their unsecured debt in three years)." Because the Debtors in *Stewart* had made an attempt to reduce their expenses to "bare bones" and both had new employment that they obtained two months prepetition, the court concluded that these circumstances coupled with a return of 35% to unsecured creditors over a five year period did not warrant dismissal under § 707(b)(3).

For some courts, the ability to pay more than 50% of unsecured debt is a hallmark of abuse. *In re Smith,* 1995 WL 20345, *2 (Bankr. D. Idaho 1995) ("Generally, if a debtor is able to fund repayment of upwards of 50% of his debts through a Chapter 13 plan, the courts have been inclined to dismiss the case for substantial abuse of Chapter 7.").

In *In re Lipford*, 397 B.R. 320, 328 (Bankr. M.D.N.C. 2008), the court found that the above median income debtors could afford to repay 100% of their unsecured debt over five years and dismissed the case. It too examined cases in which courts found substantial abuse under pre-BAPCPA cases and cited cases where the anticipated dividend was significantly less than 100%. Each of those cases, however, involved

9

circumstances in addition to the ability to pay. In *In re Behlke,* 358 F.3d 429, 437 (6th Cir.2004), the debtors could pay a dividend of 14% to 23% but in addition, the court noted that the debtors had stable employment and that their lifestyle while not "extravagant," was not "austere" and that they had filed for bankruptcy "to escape the burden of exorbitant but self-imposed credit card debt."  In *Shaw v. U.S. Bankruptcy Adm'r (In re Shaw),* 310 B.R. 538, 542 (M.D.N.C.2004), the debtors could pay a dividend of 29% over 36 months but they had also "lived beyond their means for a substantial period" and despite suffering financial difficulty made no significant changes to their spending habits.  In *In re Norris,* 225 B.R. 329, 332-33 (Bankr. E.D. Va.1998), substantial abuse was found where debtors had the ability to repay 47% of debt through a Chapter 13 plan.  The court noted, however, that there was a gradual erosion of their finances, that they considered but chose not to move to a less costly home; in essence they were living beyond their means and some of their expenses were "excessive and unreasonable."  In *In re Vianese,* 192 B.R. 61, 71 (Bankr.N.D.N.Y.1996), substantial abuse was found where debtors could pay 19% to unsecured creditors in Chapter 13.  Much of their debt was from gambling losses which the court viewed as "an excess similar to other excess associated with living beyond one's means" while their purchase of life insurance was deemed to be unreasonable. *In re Jarrell,* 189 B.R. 374, 376 (Bankr.M.D.N.C.1995), substantial abuse indicated where debtors could pay 80% of debt over 36 months and had taken cash advances and made consumer purchases in excess of their ability to pay.  Moreover the court found their proposed budget excessive.  In *In re Bryant,* 47 B.R. 21, 23

10

(Bankr.W.D.N.C.1984), substantial abuse was found where the debtor, "with only a modicum of restraint," could pay 67% of his unsecured obligations over a 36 month period. The court also concluded that the debtor's expenses were so overstated as to constitute bad faith.

The Court recognizes that amount of unsecured debt and a potential dividend are inversely proportional so that debtors with higher amounts of debt might skate around the totality of the circumstances test if a strictly mathematical formula were to be applied. For that reason the test must be applied on a case by case basis with all relevant circumstances, including the excess income, the amount of the debt, when and under what circumstances the debt was acquired, whether the Debtor's expenses may be reduced beyond what she claims on Schedule J, and whether efforts have been made to make such reductions, being presented to the Court. The Court can discern from the Debtor's Schedule I that she has been employed at her current job for 29 years and that she does not contribute to a retirement plan. Her Schedule J reveals that she spends $650 a month on food, $200 on recreation. These numbers seem high but the Debtor has a daughter, although the daughter's age is not listed nor is there any indication of whether the Debtor assumes full financial responsibility for her daughter. Moreover there is nothing to indicate why the Debtor filed this bankruptcy, whether there was a sudden precipitating event or whether this was an attempt to shed debt that resulted for living beyond her means for some period of time. But the Court is not unmindful that having almost $1,000 in excess income every month is a number that is large enough to question why this Debtor is not making an attempt to pay something to her creditors.

The Court will set this matter for an evidentiary hearing and issue a contested prehearing order. The deadline for the United States Trustee to object to discharge is continued until ten (10) days after the Court issues its final decision on the Motion to Dismiss.

Dated: March 18, 2009

_____
Joel B. Rosenthal
United States Bankruptcy Judge